**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN BARROW, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13 C 8779 |
| | ) | |
| v. | ) | Judge Amy J. St. Eve |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

The Court grants Defendant Officers' motion to dismiss Counts I and II with prejudice and denies Defendant Officers' motion to dismiss Count IV [10]. The Court grants Defendant City of Chicago's motion to dismiss Count III without prejudice [12]. The Court grants Plaintiff leave to amend Count III in an Amended Complaint in accordance with this Order by no later than May 19, 2014.

### STATEMENT

On December 9, 2013, Plaintiff John Barrow filed the present five-count Complaint against Defendants City of Chicago and certain individual Chicago police officers alleging that Defendants violated his constitutional rights. *See* 42 U.S.C. § 1983. Before the Court are Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants Defendant Officers' motion to dismiss Counts I and II with prejudice and denies Defendant Officers' motion to dismiss Count IV. Further, the Court grants Defendant City of Chicago's motion to dismiss Count III without prejudice. The Court grants Plaintiff leave to file an Amended Complaint in accordance with this Order by no later than May 19, 2014.

### LEGAL STANDARD[1]

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief

---

[1] Plaintiff sets forth the wrong legal standard for a Rule 12(b)(6) motion to dismiss using verbiage similar to the "no set of facts" language that originated in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In 2007, the United States Supreme Court unequivocally rejected this language when retooling the federal pleading standards. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("after puzzling the profession for 50 years, this famous observation has earned its retirement"). Indeed, throughout his legal memorandum, Plaintiff relies on pre-*Twombly* case law to support his arguments that he has satisfied the federal pleading standards.

may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665-66 (7th Cir. 2013). Also, a "motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago,* 675 F.3d 743, 745 n.1 (7th Cir. 2012). "[A] plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses," but "when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Independent Trust Corp. v. Stewart Info. Serv. Corp.,* 665 F.3d 930, 935 (7th Cir. 2012).

## BACKGROUND

On November 23, 2011, around 8 p.m., Plaintiff, who was an employee of Reliance Security Services ("Reliance"), had just completed his shift working as a security officer at a Foot Locker store on the south side of Chicago. (R. 1, Compl. ¶ 7.) Sometime after 10:00 p.m. on that same date, Reliance dispatched Plaintiff to a facility named "Cold Storage" located in McCook, Illinois to perform armed security services. (*Id*. ¶ 8.) Reliance advised Plaintiff that he was to cover the 11:00 p.m. to 7:00 a.m. night shift. (*Id*.) While en route to Cold Storage, Defendant Officers stopped Plaintiff although he had not committed any traffic violations. (*Id*. ¶ 9.) At that time, Defendant Officers demanded that Plaintiff produce his driver's license, proof of insurance, and registration. (*Id*. ¶ 10.) Plaintiff alleges that he complied with Defendant Officers' commands and did not exhibit suspicious or threatening behavior. (*Id*.)

Further, Plaintiff alleges that Defendant Officers then ordered him out of the car at which time they unlawfully searched him and his car without justification or probable cause. (*Id*. ¶ 11.) Upon exiting his vehicle, Plaintiff informed Defendant Officers that he was a security guard, that he was on his way to work, and that he lawfully had a firearm in his possession. (*Id*. ¶ 13.) According to Plaintiff, Defendant Officers ignored his explanation and stated that they "locked up" security guards solely for the inconvenience it causes them and that they know the case will "be tossed out." (*Id*. ¶ 14.) Defendant Officers then arrested Plaintiff on the criminal charge of Aggravated Unlawful Use of a Weapon ("AUUW"). (*Id*. ¶ 15.) Plaintiff, however, maintains that as a professional security guard he has completed the requisite training courses and at all relevant times he was licensed and authorized to carry his firearm in Illinois. (*Id*. ¶ 12.) Moreover, at the time of his arrest, Plaintiff alleges that he was in possession of documentation

2

attesting to the same, including but not limited to, his Firearm Owners Identification card, his Permanent Employee Registration card, his Fire Arm Control card, and his Reliance Security Services Employee card. (*Id*.) Plaintiff asserts that he produced these documents to Defendant Officers prior to his arrest. (*Id*.)

After arresting Plaintiff, Defendant Officers transported him to jail. (*Id*. ¶ 16.) Plaintiff further alleges that he had to pay bail to be released while awaiting trial and was forced to hire an attorney to defend against false charges. (*Id*.) Plaintiff's car was towed and stored at Plaintiff's expense. (*Id*.) Also, Reliance fired Plaintiff from his job due to his inability to work. (*Id*.) Over the next several months, Plaintiff was forced to return to Cook County Circuit Court on numerous occasions. (*Id*. ¶ 17.) Each time Plaintiff appeared for the criminal case, he was informed that the court had to continue his case because the prosecution was not ready to proceed. (*Id*.) After several months, Plaintiff communicated to the Circuit Court that he was legally entitled to carry a firearm on the day of his arrest and that he had in the paperwork to prove it at that time. (*Id*. ¶ 18.) According to Plaintiff, the Circuit Court dismissed the weapons charges in a manner indicative of Plaintiff's innocence. (*Id*.)

In his Complaint, Plaintiff alleges the following claims: (1) a Fourth Amendment false arrest claim against Defendant Officers (Count I); (2) a Fourth Amendment unreasonable seizure claim against Defendant Officers (Count II); (3) a claim pursuant to *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), against the City of Chicago (Count III); (4) a Fourteenth Amendment due process claim based on his liberty interest in his profession against all Defendants (Count IV); and (5) and an indemnification claim against the City of Chicago pursuant to 745 ILCS 10/9-102 (Count V).

**ANALYSIS**

**I.     Fourth Amendment Claims — Counts I and II**

In Count I, Plaintiff brings a Fourth Amendment false arrest claim, and in Count II, he alleges a Fourth Amendment unreasonable seizure claim, which is, in essence, a claim for false arrest. *See Gonzalez v. Village of West Milwaukee,* 671 F.3d 649, 655 (7th Cir. 2012) ("'False arrest' is shorthand for an unreasonable seizure prohibited by the Fourth Amendment."). Section 1983 claims brought in Illinois have a two-year limitations period. *See Turley v. Rednour,* 729 F.3d 645, 651 (7th Cir. 2013). "[A] § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace v. Kato*, 549 U.S. 384, 397, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). The *Wallace* Court gives examples of being "detained pursuant to legal process," including being bound over by a magistrate or arraigned on charges. *See id.* at 389-90.

In his Complaint, Plaintiff alleges that Defendant Officers falsely arrested him on November 23, 2011 without a warrant. The state court docket shows that on November 24,

3

2011, a judge found probable cause to detain Plaintiff and set Plaintiff's bail.[2] *See Gerstein v. Pugh,* 420 U.S. 103, 125, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) ("the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest."). The docket also reveals that the Circuit Court arraigned Plaintiff on January 23, 2012.

The parties dispute what date Plaintiff's Fourth Amendment false arrest claims accrued. Defendants argue that Plaintiff's claims accrued the day the state court judge found probable cause to detain Plaintiff pursuant to *Gerstein,* which was November 24, 2011. Plaintiff, on the other hand, argues that his Fourth Amendment false arrest claims did not accrue until the Circuit Court arraigned him on January 23, 2012, which is within the two-year limitations period. Plaintiff appears to be arguing that the state court's *Gerstein* hearing did not provide "legal process" as envisioned by *Wallace*, and thus his Fourth Amendment claim did not accrue until the Circuit Court arraigned him.

Plaintiff does not support his argument with any pertinent legal authority. Indeed, the Seventh Circuit has yet to address this particular issue, although the Tenth Circuit and a district court in the Northern District of Illinois have both concluded that being detained following a *Gerstein* hearing is detention pursuant to legal process within the meaning of *Wallace*. *See Young v. Davis,* 554 F.3d 1254, 1257 (10th Cir. 2009); *Pope v. City of Chicago*, No. 08 C 4715, 2009 WL 811625, at *2 (N.D. Ill. Mar. 24, 2009). In particular, the Tenth Circuit reasoned that "[a]lthough a probable cause determination by a judicial officer was not given as one of the examples of legal process in *Wallace*, the Court was not providing a complete list of situations that could constitute the initiation of legal process." *Young*, 554 F.3d at 1257. Indeed, as the Seventh Circuit teaches, "a false imprisonment ends, and the claim accrues when [a plaintiff] is held pursuant to a warrant or other judicially issued process." *National Cas. Co. v. McFatridge,* 604 F.3d 335, 344 (7th Cir. 2010). As such, it stands to reason that if an arrest made pursuant to a warrant supported by probable cause provides legal process, then a judicial determination of probable cause at a *Gerstein* hearing after a warrantless arrest equally provides legal process. *See Gerstein,* 420 U.S. at 126 ("the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention"); *Snodderly v. R.U.F.F. Drug Enforcement Task Force,* 239 F.3d 892, 899 (7th Cir. 2001) ("The issuance of an arrest warrant is an act of legal process that signals the beginning of a prosecution.").

As such, Plaintiff's false arrest claim accrued on November 24, 2011 when the state court found probable cause and Plaintiff filed the present lawsuit over two years later on December 9, 2013. Therefore, his false arrest claims are untimely. *See Brooks v. City of Chicago*, 564 F.3d 830, 832 (7th Cir. 2009); *Dominguez v. Hendley,* 545 F.3d 585, 589 (7th Cir. 2008). Because

---

[2] Defendant Officers attach the docket of Plaintiff's criminal case in the Circuit Court of Cook County to their Rule 12(b)(6) motion to dismiss. The Court takes judicial notice of the state court's docket. *See In re Salem,* 465 F.3d 767, 771 (7th Cir. 2006) (courts may take judicial notice of court dockets and opinions).

Plaintiff's Fourth Amendment false arrest claims as alleged in Counts I and II are untimely, the Court dismisses Counts I and II with prejudice.

## II. Fourteenth Amendment Due Process Allegations — Count II

Along with his Fourth Amendment unreasonable seizure claim, in Count II, Plaintiff also alleges that Defendant Officers violated his Fourteenth Amendment due process rights by making statements that were false and that Defendant Officers fabricated evidence. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In his legal memorandum, Plaintiff argues that this fabricated evidence caused the prosecuting attorney to continue legal proceedings against him.

Although knowingly using perjured testimony to convict a plaintiff is a violation of a plaintiff's due process right to a fair trial and failing to disclose a false statement underlying a criminal charge violates *Brady*, *see Fields v. Wharrie*, 740 F.3d 1107, 1117 (7th Cir. 2014), here the Circuit Court of Cook County dismissed the criminal charges against Plaintiff via a nolle prosequi order. As such, Plaintiff never went to trial. Under these circumstances, there is no basis for any such due process or *Brady* claims. *See Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011); *Garcia v. City of Chicago,* 24 F.3d 966, 971-72 (7th Cir. 1994); *Cairel v. Alderden,* 09 C 1878, 2014 WL 916364, at *7 (N.D. Ill. Mar. 6, 2014); *Jones v. City of Chicago*, No. 08 C 3591, 2011 WL 1898243, at *3 (N.D. Ill. May 18, 2011). Therefore, Plaintiff cannot sustain a due process claim based on these allegations.

## II. Monell Claim — Count III

In its motion to dismiss, the City argues that Plaintiff has not sufficiently alleged his *Monell* claim under the federal pleading standards. To establish liability against Chicago, Plaintiff "must show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012). Plaintiff can demonstrate this requirement through: (1) an actual official policy; (2) a practice or custom that, although not officially authorized, is widespread and well-established; or (3) a deliberate act from an Evanston employee with final policy-making authority. *See Gonzalez*, 671 F.3d at 664.

Accepting Plaintiff's well-pleaded facts as true, Plaintiff has failed to provide "enough details about the subject-matter of the case to present a story that holds together" as it relates to a widespread practice or custom. *See Engel v. Buchan,* 710 F.3d 698, 709 (7th Cir. 2013) (citation omitted). In particular, Plaintiff's *Monell* allegations consist of the following:

> The City Of Chicago has a policy, practice and custom [of] failing to adequately train and/or directing its personnel in a fashion that caused the Defendant Officers to ignore and dishonor "exemptions" to "AUUW" prohibitions as stated in the Illinois Compiled Statutes.

Plaintiff has a constitutional right to work and bear firearms; the City Of Chicago has a policy, practice, custom and scheme that undermines and "chills" said rights by falsely arresting and maliciously prosecuting law abiding gun owners.

These policies, practices, and customs directly and proximately caused the constitutional violations and injuries to Plaintiff, thereby making them directly chargeable to the City Of Chicago.

(Compl. ¶¶ 34-36.)

Although Plaintiff sets forth general allegations for a failure to train or supervise claim pursuant to *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), Plaintiff's bare-boned allegations do not supply enough facts to put the City on notice of his *Monell* claim and the grounds upon which it rests. *See Twombly,* 550 U.S. at 555. Moreover, Plaintiff throws in language commonly used in First Amendment cases, appears to mention Second Amendment protections, and states that he has a constitutional right to work, although in other parts of his Complaint he alleges that he has a liberty interest in his work. In short, Plaintiff's allegations are confusing. The Court therefore grants the City's motion to dismiss Plaintiff's *Monell* claim as alleged in Count III without prejudice and grants Plaintiff leave to file an amended *Monell* claim with counsel's Rule 11 obligations in mind.

### III.    Due Process Claim — Count IV

In Count IV of his Complaint, Plaintiff alleges that he has both a protected liberty and property interest in his employment and that Defendant Officers' misconduct denied him his constitutionally protected employment interest. As the United States Supreme Court teaches, "to determine whether due process requirements apply in the first place" courts "must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 570-71, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). A protected property interest is a legitimate claim of entitlement — not defined by the Constitution — but "by existing rules or understandings that stem from an independent source such as state law." *Id.* at 577; *see also Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005). Fundamental liberty interests include bodily integrity, the right to marry, marital privacy, and the right to have children, to name a few. *See Washington v. Glucksberg,* 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997).

In his response brief, Plaintiff does not discuss how his employment is a property interest nor does he point to an independent source, like state law, to establish a basis for his alleged property interest. *See, e.g., Harbaugh v. Board of Educ. of City of Chicago*, 716 F.3d 983, 986 (7th Cir. 2013) (under Illinois School Code, tenured teacher has protectible property interest in employment). Instead, he asserts that he has a liberty interest in his employment citing Seventh Circuit case law which holds that the "concept of liberty protected by the due process clause has long included occupational liberty — 'the liberty to follow a trade, profession, or other calling.'"

*Wroblewski v. City of Washburn,* 965 F.2d 452, 455 (7th Cir. 1992) (quoting *Lawson v. Sheriff of Tippecanoe County,* 725 F.2d 1136, 1138 (7th Cir. 1984)). The *Wroblewski* decision further explains that "[i]t is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." *Id.* at 455.

Here, accepting the allegations as true, Plaintiff alleges that Defendant Officers' misconduct infringed upon his ability to work as a security guard, which is a profession, and not a particular job. *See id.* at 457 (occupational liberty can be basis for substantive due process claim). Thus, under the federal pleading standards, Plaintiff has alleged sufficient facts to support his due process claim as alleged in Count IV. *See Iqbal,* 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Therefore, the Court denies Defendants' motion to dismiss Count IV.

### IV. State Law Claims

#### A. Intentional Infliction of Emotional Distress

In his response brief, Plaintiff argues that his intentional infliction of emotional distress ("IIED") claim is not time-barred. Plaintiff, however, did not allege an IIED claim in his Complaint. Even if he had, Plaintiff's IIED claim against Defendant Officers would be time-barred pursuant to the Illinois Local Government and Governmental Employees Tort Immunity Act one year limitations period. *See* 745 ILCS 10/8–1; *see also Evans v. City of Chicago,* 434 F.3d 916, 934 (7th Cir. 2006), *overruled on other grounds, Hill v. Tangherlini*, 724 F.3d 965, 967-68 (7th Cir. 2013)). Under Illinois law, "a claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest." *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013). Here, Plaintiff alleges that Defendant Officers arrested him on November 23, 2011 and he filed the present lawsuit on December 9, 2013, therefore, Plaintiff's IIED claim is untimely.

In his response brief, Plaintiff cites a handful of federal district court cases in support of his argument that his IIED claim did not accrue until his state criminal proceedings terminated. These district court cases are not controlling, especially in light of the Seventh Circuit's 2013 decision that "a claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest." *Bridewell,* 730 F.3d at 678. Indeed, recent district court cases acknowledge *Bridewell's* holding. *See, e.g., Cairel v. Alderden,* No. 09 C 1878, 2014 WL 916364, at *10 (N.D. Ill. Mar. 6, 2014).

Moreover, any argument that Plaintiff's IIED claim is a continuing tort or violation is misplaced in light of the Seventh Circuit's *Bridewell* decision. *See id.* at 678 ("[t]he idea that failing to reverse the ongoing effects of a tort restarts the period of limitations has no support in Illinois law — or in federal law either."); *see also United States v. Midwest Generation, LLC,* 720 F.3d 644, 648 (7th Cir. 2013) ("enduring consequences of acts that precede the statute of limitations are not independently wrongful").

7

B.	**Malicious Prosecution**

Similarly, in their motion to dismiss, Defendant Officers argue that even though Plaintiff did not allege a state law malicious prosecution claim in his Complaint, any such claim against them would be untimely. Plaintiff does not respond or dispute Defendant Officers' malicious prosecution arguments, and thus Plaintiff has abandoned this claim. *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of discussion amounts to abandonment of claims). Therefore, there is no pending malicious prosecution claim in this matter.

**Dated:** April 21, 2014

_____
**AMY J. ST. EVE
United States District Court Judge**