# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOHN BARROW, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13 C 8779 |
| | ) | |
| v. | ) | Judge Amy J. St. Eve |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The Court grants Defendant City of Chicago's motion to dismiss without prejudice [32] and grants Defendant Officers' motion to dismiss with prejudice [34]. Defendant Officers are no longer Defendants to this lawsuit. Plaintiff must file a Second Amended Complaint in accordance with this Order by no later than October 3, 2014.

## STATEMENT

After the Court granted in part and denied in part Defendants' original motions to dismiss on April 21, 2014, Plaintiff John Barrow filed the present three-count Amended Complaint against Defendants City of Chicago and certain individual Chicago police officers alleging that Defendants violated his constitutional rights. *See* 42 U.S.C. § 1983. The Court presumes familiarity with its April 21, 2014, Order. Before the Court are Defendants' newly-filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants Defendants City's motion without prejudice and grants Defendant Officers' motion with prejudice. The Court also grants Plaintiff leave to file a Second Amended Complaint in accordance with this Order.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In reviewing the

sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true, *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665-66 (7th Cir. 2013), and draw "reasonable inferences in favor of the plaintiffs." *Teamsters Local Union No. 705 v. Burlington No. Santa Fe, LLC,* 741 F.3d 819, 823 (7th Cir. 2014).

## BACKGROUND

On November 23, 2011, around 8 p.m., Plaintiff, who was an employee of Reliance Security Services ("Reliance"), had just completed his shift working as a security officer at a Foot Locker store on the south side of Chicago. (R. 26, Am. Compl. ¶ 7.) Sometime after 10:00 p.m. on that same date, Reliance dispatched Plaintiff to a facility named "Cold Storage" located in McCook, Illinois to perform armed security services. (*Id*. ¶ 8.) Reliance advised Plaintiff that he was to cover the 11:00 p.m. to 7:00 a.m. night shift. (*Id*.) While en route to Cold Storage, Defendant Officers stopped Plaintiff although he had not committed any traffic violations. (*Id*. ¶ 9.) At that time, Defendant Officers demanded that Plaintiff produce his driver's license, proof of insurance, and registration. (*Id*. ¶ 10.) Plaintiff alleges that he complied with Defendant Officers' commands and did not exhibit suspicious or threatening behavior. (*Id*.)

Plaintiff further asserts that Defendant Officers then ordered him out of the car at which time they unlawfully searched him and his car without justification or probable cause. (*Id*. ¶ 11.) Upon exiting his vehicle, Plaintiff informed Defendant Officers that he was a security guard, that he was on his way to work, and that he lawfully had a firearm in his possession. (*Id*. ¶ 13.) According to Plaintiff, Defendant Officers ignored his explanation and stated that they "locked up" security guards solely for the inconvenience it causes them and that they know the case will "be tossed out." (*Id*. ¶ 14.) Defendant Officers then arrested Plaintiff on the criminal charge of Aggravated Unlawful Use of a Weapon ("AUUW"). (*Id*. ¶ 15.) Plaintiff, however, alleges that as a professional security guard he has completed the requisite training courses and at all relevant times he was licensed and authorized to carry his firearm in Illinois. (*Id*. ¶ 12.) Moreover, at the time of his arrest, Plaintiff alleges that he was in possession of documentation attesting to the same, including but not limited to, his Firearm Owners Identification card, his Permanent Employee Registration card, his Fire Arm Control card, and his Reliance Security Services Employee card. (*Id*.) Plaintiff asserts that he produced these documents to Defendant Officers prior to his arrest. (*Id*.)

After arresting Plaintiff, Defendant Officers transported him to jail. (*Id*. ¶ 16.) Plaintiff further asserts that he had to pay bail to be released while awaiting trial and was forced to hire an attorney to defend against false charges. (*Id*.) Also, Plaintiff's car was towed and stored at Plaintiff's expense. (*Id*.) Thereafter, Reliance fired Plaintiff from his job due to his inability to work. (*Id*.) Over the next several months, Plaintiff was forced to return to the Cook County Circuit Court on numerous occasions. (*Id*. ¶ 17.) Each time Plaintiff appeared for his criminal case, court staff informed him that his case had to be continued because the prosecution was not ready to proceed. (*Id*.) After several months, Plaintiff communicated to the Circuit Court that he was legally entitled to carry a firearm on the day of his arrest and that he had in the paperwork to

2

prove it at that time. (*Id.* ¶ 18.) According to Plaintiff, the Circuit Court dismissed the weapons charges in a manner indicative of Plaintiff's innocence. (*Id.*)

Plaintiff further alleges that the City of Chicago has a policy, practice, and custom of failing to adequately train and/or directing its personnel causing Defendant Officers to ignore and dishonor "exemptions" to AUUW prohibitions as stated in the Illinois statutes. (*Id.* ¶ 19.) In addition, Plaintiff alleges that the Chicago Police Department ("CPD") has a policy, practice, and custom regarding officers not including exculpatory information on reports regarding AUUW suspects. (*Id.* ¶ 20.) Further, Plaintiff alleges that the CPD has a policy, practice, and custom of failing to adequately train its personnel with respect to proper investigatory procedure relating to identifying and honoring firearm credentials of law-abiding citizens. (*Id.*) Plaintiff maintains that Chicago has been put on notice of its unconstitutional policy, practices, and customs by similar lawsuits and complaints. (*Id.* ¶ 21.) According to Plaintiff, pursuant to these unconstitutional policies, Defendant Officers illegally arrested Plaintiff, seized his weapon, and prevented him from going to work. (*Id.* ¶ 22.)

In his Amended Complaint, Plaintiff alleges the following claims: (1) a claim pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), against the City of Chicago; (2) a Fourteenth Amendment due process claim based on his liberty interest in his employment against all Defendants; and (3) and an indemnification claim against the City of Chicago pursuant to 745 ILCS 10/9-102.

## ANALYSIS

### I.  Monell Claim

In its motion to dismiss, the City argues that Plaintiff has not sufficiently alleged his *Monell* claim. To establish liability against the City of Chicago, Plaintiff "must show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012). Plaintiff can demonstrate this requirement through: (1) an actual official policy; (2) a practice or custom that, although not officially authorized, is widespread and well-established; or (3) a deliberate act from a City employee with final policy-making authority. *See Gonzalez* v. *Village of West Milwaukee,* 671 F.3d 649, 664 (7th Cir. 2012).

The City specifically argues that because the Court dismissed Plaintiff's Fourth Amendment claims as untimely and Plaintiff's *Brady* claim as untenable, there is no underlying constitutional violations supporting Plaintiff's *Monell* claim. It appears that the City is arguing that the Court must dismiss Plaintiff's *Monell* claim because the City's liability is contingent on the individual officers' liability, an argument the Seventh Circuit rejected in *Thomas v. Cook County Sheriff's Dep't,* 604 F.3d 293, 305 (7th Cir. 2010) ("a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict.") (emphasis in original).

That being said, accepting Plaintiff's well-pleaded facts and all reasonable inferences as true, Plaintiff has failed to cure the pleading deficiencies that the Court pointed out in its April 21, 2014, Order. In particular, although Plaintiff sets forth general allegations for a failure to train claim pursuant to *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), a failure to train claim is not a stand alone constitutional violation. *See, e.g., Connick v. Thompson*, 131 S.Ct. 1350, 1358 (2011). Instead, allegations of a failure to train supply a basis for municipal liability claims. *See Rice v. Correctional Med. Servs.,* 675 F.3d 650, 675 (7th Cir. 2012) ("The failure to provide adequate training to its employees may be a basis for imposing liability on a municipality.").

As such, Plaintiff must sufficiently allege an underlying constitutional deprivation connected with the City's failure to train, which he has failed to do. Specifically, although Plaintiff alleges police misconduct in relation to security guards arrested for AUUW, he does not supply any details or explain how this misconduct constitutes a constitutional deprivation. The Court therefore grants the City's motion to dismiss Plaintiff's *Monell* claim without prejudice and grants Plaintiff leave to file an amended *Monell* claim. The Court will not grant Plaintiff further leave to amend this claim if Plaintiff does not properly allege a *Monell* claim in his Second Amended Complaint. *See Agnew v. National Collegiate Athletic Ass'n,* 683 F.3d 328, 347 (7th Cir. 2012).

## II.     Procedural Due Process Liberty Interest Claim

As Defendant Officers recognize in their present motion to dismiss, the Court denied their motion to dismiss Plaintiff's procedural due process occupational liberty interest claim in the April 21, 2014, Order. In the present motion, Defendant Officers ask the Court to revisit its ruling. Because Defendant Officers are asking the Court to reconsider its earlier, interlocutory ruling, the Court reviews their motion under Rule 54(b), which states in relevant part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Under Rule 54(b), the Court may exercise its inherent authority to reconsider its interlocutory orders because such orders "may be revised at any time before the entry of judgment adjudicating all the claims." *See* Fed. R. Civ. P. 54(b); *see also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge"); *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012) ("Rule 54(b) provides that non-final orders may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities").

Plaintiff bases his occupational liberty interest claim on Defendant Officers falsely arresting him and charging him with crimes that he did not commit, along with the fact that he was fired from his job as a security officer. Defendant Officers argue that occupational liberty interest claims can only be brought in the context of public employment and not in police misconduct cases. Although occupational liberty interest claims are commonly brought in public employment situations, *see Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010), plaintiffs have also brought such claims within other contexts. *See, e.g., Mann v. Vogel,* 707 F.3d 872, 878 (7th Cir. 2013) (owner of private child care center sued DCFS); *Khan v. Bland,* 630 F.3d 529, 534 (7th Cir. 2010) (landlord sued local housing authority). The occupational liberty interest guarantee is narrow, but also nuanced, and there is no bright-line rule — as Defendant Officers suggest — that a litigant cannot bring any such claim in the context of a police misconduct case.

In any event, assuming Plaintiff has sufficiently alleged his occupational liberty interest claim, "the remedy mandated by the Due Process Clause of the Fourteenth Amendment is 'an opportunity to refute the charge.'" *Codd v. Velger*, 429 U.S. 624, 627, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam) (citing *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). "The purpose of such notice and hearing is to provide the person an opportunity to clear his name." *Codd*, 429 U.S. at 627 (citation omitted). As the Seventh Circuit teaches, "the due process clause does not forbid deprivations of liberty," but "only those deprivations that are effectuated without due process of law. If the state provides notice of and an opportunity to be heard concerning allegations that if publicized will render a person unemployable, the person has no ground for a federal claim." *Atwell v. Lisle Park Dist.,* 286 F.3d 987, 993 (7th Cir. 2002).

Here, as Plaintiff alleges, he had the opportunity to refute the criminal charges in the Circuit Court of Cook County, where he explained to the court "that he was legally entitled to carry a firearm on the day he was arrested and that he had in his possession the paperwork to prove it at the time." (Am. Compl. ¶ 18.) Plaintiff also alleges that the Circuit Court dismissed the weapons charges against him. (*Id*.) Accordingly, Plaintiff received all of the process he was due. *See Amobi v. District of Columbia Dept. of Corr.*, 755 F.3d 980, 995 (D.C. Cir. 2014). The Court therefore grants Defendant Officers' motion and dismisses Plaintiff's occupational liberty interest claim from this lawsuit.

**Dated:** September 11, 2014

**AMY J. ST. EVE**
**United States District Court Judge**