IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN BARROW, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13 C 8779 |
| | ) | |
| v. | ) | Judge Amy J. St. Eve |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

The Court grants Defendant City of Chicago's motion to dismiss with prejudice and dismisses this lawsuit in its entirety [41]. All pending dates and deadlines are stricken. Civil case terminated.

**STATEMENT**

On September 11, 2014, the Court granted Defendant City of Chicago's motion to dismiss without prejudice and granted Plaintiff leave to file a Second Amended Complaint regarding his claim based on *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which is the only remaining claim in this lawsuit. The Court warned Plaintiff that it would not grant him leave to amend if Plaintiff did not properly allege his *Monell* claim in the Second Amended Complaint. *See Agnew v. National Collegiate Athletic Ass'n,* 683 F.3d 328, 347 (7th Cir. 2012) (the "district court is not required to grant such leave when a plaintiff has had multiple opportunities to state a claim upon which relief may be granted."). On October 3, 2014, Plaintiff filed a Second Amended Complaint alleging his *Monell* claim. Before the Court is the City's motion to dismiss Plaintiff's *Monell* claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants Defendant's motion to dismiss with prejudice and dismisses this lawsuit in its entirety because Plaintiff has had three opportunities to sufficiently allege his *Monell* claim, but has failed to do so.

**LEGAL STANDARD**[1]

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief

---

[1] The Court notes that throughout his legal memorandum, Plaintiff relies on cases decided before the Supreme Court's decisions in *Twombly* and *Iqbal*, which added the plausibility standard to the federal pleading requirements. *See Peterson v. Winston & Strawn LLP,* 729 F.3d 750, 753 (7th Cir. 2013).

may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true, *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665-66 (7th Cir. 2013), and draw "reasonable inferences in favor of the plaintiffs." *Teamsters Local Union No. 705 v. Burlington No. Santa Fe, LLC,* 741 F.3d 819, 823 (7th Cir. 2014).

## BACKGROUND

On November 23, 2011, around 8 p.m., Plaintiff, who was an employee of Reliance Security Services ("Reliance"), had just completed his shift working as a security officer at a Foot Locker store on the south side of Chicago. (R. 41, Second Am. Compl. ¶ 7.) Sometime after 10:00 p.m. on that same date, Reliance dispatched Plaintiff to a facility named "Cold Storage" located in McCook, Illinois to perform armed security services. (*Id.* ¶ 8.) Reliance advised Plaintiff that he was to cover the 11:00 p.m. to 7:00 a.m. night shift. (*Id.*) While en route to Cold Storage, Defendant Officers stopped Plaintiff even though he had not committed any traffic violations. (*Id.* ¶ 9.) At that time, Defendant Officers demanded that Plaintiff produce his driver's license, proof of insurance, and registration. (*Id.* ¶ 10.) Plaintiff alleges that he calmly complied with Defendant Officers' commands and did not exhibit suspicious or threatening behavior. (*Id.*)

Further, Plaintiff alleges that Defendant Officers then ordered him out of the car at which time they unlawfully searched him and his car without justification or probable cause. (*Id.* ¶ 11.) According to Plaintiff, as a professional security guard, he had previously completed the requisite training courses and at all relevant times, was licensed and authorized to carry his firearm in Illinois. (*Id.* ¶ 12.) Moreover, at the time of his arrest, Plaintiff was in possession of documentation attesting to the same, including but not limited to: (1) his Firearm Owners Identification ("FOID") card; (2) his Permanent Employee Registration ("PERC") card; (3) his Fire Arm Control card; and (4) his Reliance Security Services Employee card. (*Id.*) Plaintiff alleges that he produced these documents to the arresting Officers prior to his arrest. (*Id.*) Specifically, upon exiting his vehicle, Plaintiff informed Defendant Officers that he was a security guard, that he was on his way to work, and that he lawfully had a firearm in his possession. (*Id.* ¶ 13.) Plaintiff alleges that Defendant Officers ignored his explanation and stated that they "locked up" security guards solely for the inconvenience it causes them and that they know the case will "be tossed out." (*Id.* ¶ 14.) Defendant Officers then arrested Plaintiff on the criminal charge of Aggravated Unlawful Use of a Weapon ("AUUW"). (*Id.* ¶ 15.) Plaintiff

2

maintains that the arresting officers knew or should have known that he was exempt from criminal charges for AUUW under the circumstances. (*Id.*)

After arresting Plaintiff, Defendant Officers transported him to jail. (*Id.* ¶ 16.) Plaintiff further asserts that he had to pay bail to be released while awaiting trial and was forced to hire an attorney to defend against false charges. (*Id.*) Also, Plaintiff's car was towed and stored at his expense. (*Id.*) Thereafter, Reliance fired Plaintiff from his job due to his inability to work. (*Id.*) Over the next several months, Plaintiff was forced to return to the Cook County Circuit Court on numerous occasions. (*Id.* ¶ 17.) Each time Plaintiff appeared for his criminal case, court staff informed him that his case had to be continued because the prosecution was not ready to proceed. (*Id.*) After several months, Plaintiff communicated to the Circuit Court that he was legally entitled to carry a firearm on the day of his arrest and that he had in the paperwork to prove it at that time. (*Id.* ¶ 18.) According to Plaintiff, the Circuit Court dismissed the weapons charges in a manner indicative of Plaintiff's innocence. (*Id.*)

Plaintiff further alleges that the City of Chicago has a policy, practice, and custom of failing to adequately train and/or directing its personnel causing Defendant Officers to ignore and dishonor "exemptions" to AUUW prohibitions as stated in the Illinois statutes. (*Id.* ¶ 19.) In addition, Plaintiff alleges that the Chicago Police Department ("CPD") has a policy, practice, and custom regarding officers not including exculpatory information on reports regarding AUUW suspects. (*Id.* ¶ 20.) In addition, Plaintiff alleges that the CPD has a policy, practice, and custom of failing to adequately train its personnel with respect to proper investigatory procedure relating to identifying and honoring firearm credentials of law-abiding citizens. (*Id.*) Plaintiff asserts that the City of Chicago has been put on notice of its unconstitutional policy, practices, and customs by similar lawsuits and complaints. (*Id.* ¶ 21.) According to Plaintiff, pursuant to these unconstitutional policies, Defendant Officers illegally arrested Plaintiff, seized his weapon, and prevented him from going to work. (*Id.* ¶ 22.) In addition, Plaintiff alleges that the City of Chicago's practice "chills" its citizens' Second Amendment rights by falsely arresting and maliciously prosecuting law abiding gun owners. (*Id.* ¶ 23.)

## PROCEDURAL BACKGROUND

On April 21, 2014, the Court granted the individual Defendant Officers' motion to dismiss Plaintiff's Fourth Amendment claims brought in the original Complaint as untimely. Similarly, the Court denied Plaintiff's state law claims as untimely. The Court also dismissed with prejudice Plaintiff's claim based on *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), against the individual Defendant Officers because Plaintiff never went to trial. *See Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011); *Garcia v. City of Chicago,* 24 F.3d 966, 971-72 (7th Cir. 1994). Furthermore, the Court granted the City's motion to dismiss Plaintiff's *Monell* claim without prejudice granting Plaintiff leave to amend his *Monell* claim. Last, the Court concluded that Plaintiff had properly alleged a due process claim based on his occupational liberty to work as a security guard. *See Wroblewski v. City of Washburn,* 965 F.2d 452, 455 (7th Cir. 1992).

After Plaintiff filed a First Amended Complaint, Defendant City filed a Rule 12(b)(6) motion to dismiss Plaintiff's *Monell* claim and a motion for the Court to reconsider its decision that Plaintiff had stated a due process claim. On September 11, 2014, the Court granted Defendant's reconsideration motion regarding Plaintiff's occupational liberty interest claim, recognizing that even if Plaintiff had established this claim, the remedy involved was the opportunity to refute the criminal charges, which Plaintiff had already done in the Circuit Court of Cook County. *See Codd v. Velger*, 429 U.S. 624, 627, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam); *Amobi v. District of Columbia Dept. of Corr.*, 755 F.3d 980, 995 (D.C. Cir. 2014). Further, the Court granted Defendant's motion to dismiss Plaintiff's *Monell* claim without prejudice giving Plaintiff one more opportunity to re-allege this claim.

## ANALYSIS

In his Second Amended Complaint, Plaintiff adds a general allegation that the City's policy, custom, or practice chills its citizen's Second Amendment rights by falsely arresting and maliciously prosecuting law abiding gun owners. (*Id.* ¶ 23.) In particular, Plaintiff alleges that: "The state failed [to] provide meaningful post-deprivation remedy to secure the return of Plaintiff's firearm or replace its value. The City has a policy of destroying firearms no longer needed as evidence in criminal proceedings such as Plaintiff's, without adequate hearing." (*Id.* ¶ 26(f).)

"*Monell* permits suits against municipal entities under § 1983, but only when a governmental policy or custom caused the constitutional deprivation; municipal entities cannot be liable for their employees' actions under a respondeat superior theory." *Hahn v. Walsh*, 762 F.3d 617, 638-39 (7th Cir. 2014). To establish liability against the City, Plaintiff "must show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012). As the Seventh Circuit teaches, "the question of whether there existed a policy or custom is distinct from the question of whether the plaintiff presents a cognizable constitutional injury." *King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014). Here, Plaintiff has failed to allege a cognizable constitutional injury underlying his *Monell* claim.

First, although "a municipality can be held liable under *Monell*, even when its officers are not, *see Thomas v. Cook County Sheriff's Dep't,* 604 F.3d 293, 305 (7th Cir. 2010), Plaintiff's time-barred Fourth Amendment claims, along with the untenable *Brady* and due process claims, cannot form the basis of his *Monell* claim. *See Sallenger v. City of Springfield, Ill.,* 630 F.3d 499, 505 (7th Cir. 2010); *Walden v. City of Chicago,* 755 F.Supp.2d 942, 958 (N.D. Ill. 2010)*; see, e.g., Jones v. Indiana*, 533 Fed.Appx. 672, 673 (7th Cir. 2013) (unpublished). Moreover, Plaintiff alleges that the City's practice or custom deprived him of his First Amendment rights, although Plaintiff fails to allege any details about how the City violated his First Amendment rights. Accordingly, Plaintiff's claim based on the First Amendment does not fulfill the federal pleading standards. *See Carlson v. CSX Transp., Inc.,* 758 F.3d 819, 826-27 (7th Cir. 2014) ("A claim must be plausible rather than merely conceivable or speculative"). Indeed, in his response brief, Plaintiff does not address the City's arguments that Plaintiff cannot base his *Monell* claim

4

on his First, Fourth, and Fourteenth Amendment claims. *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of discussion in legal briefs amounts to abandonment of claims).

This leaves Plaintiff's Second Amendment allegations. Accepting his allegations and all reasonable inferences as true, Plaintiff alleges that the City of Chicago's practice "chills" its citizens' Second Amendment rights by falsely arresting and maliciously prosecuting law abiding gun owners. In other words, citing to *District of Columbia v. Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), Plaintiff maintains that when Defendant Officers seized his gun during his arrest on November 23, 2011, they violated his Second Amendment right to bear arms. Like all constitutional claims, Plaintiff's Second Amendment claim is subject to a two-year limitations period in Illinois. *See Moore v. Burge,* 771 F.3d 444, 446 (7th Cir. 2014). Plaintiff's Second Amendment claim accrued when he knew or should have known that his constitutional rights had been violated. *See Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011). Here, Plaintiff alleges that Defendant Officers unlawfully seized his firearm on November 23, 2011, and Plaintiff mentioned the Second Amendment in his original Complaint filed on December 9, 2013. Thus, Plaintiff's Second Amendment claim is untimely under the two-year limitations period.

On a final note, Plaintiff's arguments that his allegations put the City on notice of his *Monell* claim are unavailing because "[a]n inadequate complaint will not survive a motion to dismiss simply because the defendants managed to figure out the basic factual or legal grounds for the claims." *Adams v. City of Indianapolis,* 742 F.3d 720, 729 (7th Cir. 2014). Instead, Plaintiff must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" to support his allegations —which Plaintiff has failed to do. *See id.* ("By emphasizing a plausibility requirement, *Twombly* and *Iqbal* obviously require more than mere notice."). The Court therefore grants the City's Rule 12(b)(6) motion with prejudice because Plaintiff has failed to allege a claim upon which relief can be granted. *See Thulin v. Shopko Stores Operating Co., LLC,* 771 F.3d 994, 997 (7th Cir. 2014) ("Whether a complaint states a claim upon which relief may be granted is depends upon the context of the case and 'requires the reviewing court to draw on its judicial experience and common sense.'") (quoting *Iqbal,* 556 U.S. at 679).

**Dated:** December 15, 2014

**AMY J. ST EVE**
**United States District Court Judge**